The First National Bank of Hoopeston

*v.*

The Lake Erie and Western Railroad Company.

*Opinion filed June 18, 1898.*

1. Evidence—*fires by locomotives—admissibility of evidence of other fires.* Where the particular locomotive alleged to have caused the fire for which suit is brought against a railroad company is identified, evidence of other fires set by different locomotives of the company, before and after the fire complained of, is not admissible.

2. Same—*when the evidence of other fires is not competent in rebuttal.* Where the particular locomotive alleged to have caused the fire is identified, the fact that defendant's witness, in testifying that such locomotive was provided with a spark-arrester, stated that all of the company's locomotives were likewise equipped, does not render competent, as rebuttal evidence, proof of other fires set by different locomotives of defendant.

3. Trial—*when court's action on rebuttal evidence is not reviewable.* Where testimony which might properly have been introduced in chief is offered by plaintiff in rebuttal, it is discretionary with the trial court whether it shall be admitted, and the action of the court in that regard cannot be assigned as error.

4. Appeals and Errors—*whether plaintiff's prima facie case is overcome is not a question for Supreme Court.* In an action for damages for fire caused by a locomotive it is the province of the jury to determine whether the plaintiff's *prima facie* case is overcome, and the Appellate Court's judgment of affirmance is final.

*First Nat. Bank* v. *L. E. & W. R. R. Co.* 65 Ill. App. 21, affirmed.

Appeal from the Appellate Court for the Third District;—heard in that court on writ of error to the Circuit Court of Vermilion county; the Hon. F. Bookwalter, Judge, presiding.

This is a suit, brought on May 31, 1894, by the appellant, the First National Bank of Hoopeston in Vermilion county, against the appellee railroad company, for the purpose of recovering damages for loss, alleged to have been sustained by the burning of an elevator, owned by the appellant, and situated at Hoopeston. The fire, which destroyed the elevator, is alleged to have been caused by

sparks from an engine, attached to one of the freight trains of the appellee. The elevator was insured. The insurance companies paid the loss, and this suit is brought by the bank for the use of the insurance companies so paying the loss, who are subrogated to the right of the bank in the cause of action against the railroad company for alleged negligence in so destroying the building.

The declaration consists of three counts. The first count charges negligence on the part of the defendant in the equipment and operation of its locomotive. The second count charges that the locomotive was overloaded. The third count alleges common law negligence in the construction and maintenance of defendant's road with the declivitous grades hereafter referred to. The defendant below, the appellee here, filed a plea of the general issue. The defenses made were, first, that the engine alleged to have caused the injury was properly operated at the time of the injury, and equipped with the latest and best devices for arresting sparks; second, that the engineer, operating the locomotive, was a skillful and careful man; and third, that the fire originated in the lower part of the elevator, and was not produced by sparks from the engine. The case was tried before a jury, who returned a verdict in favor of the appellee, the defendant below. Motion for new trial was overruled, and judgment was entered upon the verdict, in favor of the defendant, and against the plaintiff, for costs. This judgment has been affirmed by the Appellate Court. The present appeal is from such judgment of affirmance.

The facts of the case, out of which the controversy arises, are substantially as follows: The appellee's railroad runs through Hoopeston in an east and west direction. The elevator of the appellant, which was burned, was situated just south of the railroad company's right of way, and upon a lot owned by the appellant. It adjoined the south line of the railroad right of way. About eight hundred and seventy-five feet east of the east end

of the elevator the Chicago and Eastern Illinois Railroad
Company's track, running north and south, crossed the
track of the appellee. The appellee's station was located
at the crossing made by the two railroads. About fifty-
five feet east of the east end of the elevator a street,
called Second street, crossed appellee's road. Between
eight hundred and nine hundred feet west of the west end
of the elevator stood a water tank beside the appellee's
track. For about one thousand feet east, and a little more
than that distance to the west of the water tank, the
track was level. To the west of this level stretch of track
there was an ascending grade in the appellee's road. To
the east of this level stretch of track there was also an
ascending grade in the appellee's road. In consequence
of this irregularity in the grade, a train, coming from the
west into Hoopeston, would descend towards the water
tank, and, after leaving the water tank, and going east
by the elevator and towards the station, it would ascend.

On August 31, 1892, a freight train of the appellee
came into Hoopeston from the west about noon. It passed
the elevator, and pulled up the east grade to the station,
and there unloaded the way-freight. The train was al-
lowed to back down the incline to the level grade, west
of the elevator, as far as the water tank. After the lo-
comotive, which had been detached from the train, had
been used for about an hour in switching and transfer-
ring cars from the track of one railroad to the other, it
was again attached to the train standing at the water
tank, where water and coal were taken on. The train
then started east from the water tank, and passed the
elevator up the east grade. When the train was about
half way up the grade, or a short distance east of the
railroad crossing, the engine stopped, or was stalled,
near the summit of the hill or grade. The engineer then
backed his train down past the elevator west of the
water tank, and up to the summit of the grade on the
west; a second start was then made from this point, and,

with the aid of the momentum acquired in going down
the west grade, the engineer took a run for the hill east
of the railroad crossing, and succeeded in moving the
train up the east grade, and out of the city.

A short time after the train passed the elevator going
east for the second time, fire was discovered in the north
slope of the roof of the elevator, being the side next to
the appellee's right of way.  The witnesses differed as
to the length of time which elapsed after the passing of
the train, before the fire was discovered, the time being
estimated by the different witnesses all the way from
ten to thirty minutes.  The place, where the fire was
discovered, was about thirty-six or thirty-eight feet up
from the ground.  The elevator was in operation at the
time, but the elevator engine room and stack were on
the other side of the building.  The weather was warm,
and the wind was blowing from the north-west.  The
elevator was dry and in an inflammable condition.  When
the engine passed the elevator, the exhaust was heavy,
and it was throwing sparks high in the air.  In a few
moments the whole building was in flames, and the loss
was total.

Witnesses for the appellee testified, that the locomo-
tive attached to the train was equipped with an appli-
ance, or spark-arrester, known as netting and diaphragm.
After the plaintiff had introduced its evidence and rested,
and after the defendant had introduced its evidence and
rested, the plaintiff, upon the rebuttal, asked a witness
the following questions: "Q. Have you ever, at any time
before or since the burning of the elevator in question, seen
any fires along the line of the Lake Erie and Western Rail-
road Company on their right of way, communicated from
the engines of the road?"  This question was objected
to, and the objection was sustained, and exception was
taken.  "Q. I will ask you, if, at any time, during the
summer or fall of 1892, just prior to, or just after this
fire, you witnessed other fires along the right of way,

or near the property, which has been referred to here in the evidence as Mr. Carrick's warehouse, or in other places in the vicinity of this elevator, along the east grade that has been referred to in the evidence?" This question was objected to by the defendant. The court then asked of the appellant's counsel the following question, and received the following answer: "Q. You do not propose to prove it was the same engine? A. No, sir." The court then stated: "The objection will be sustained." Exception was taken to this ruling of the court by the plaintiff.

D. J. SCHUYLER, W. R. LAWRENCE, and C. W. GREEN- FIELD, for appellant.

W. J. CALHOUN, and H. M. STEELY, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

There is only one question in this case, which counsel for appellant press upon our attention, and that question is, whether or not the court below erred in refusing to allow appellant to show in rebuttal, that other fires had been set by appellee's engines at other times in the immediate vicinity of the elevator both before and after it was destroyed. The engine or locomotive, which was alleged to have caused the fire, was identified as the engine, which drew the freight train, passing the elevator near the noon hour of August 31, 1892. It is conceded by counsel for appellant, that the testimony was confined to one certain engine of the appellee. In cases of this kind, it often happens, that the proof does not identify the particular engine, which caused the loss, but is confined to negligence in the operation and construction of the engines generally, which run on the road.

The rule seems to be settled by the weight of authority, that, when a fire has been caused by sparks from a

particular locomotive which is identified, or by one or the other of two locomotives, "evidence of other fires, kindled by different locomotives, before and after the fire complained of, is not admissible." (8 Am. & Eng. Ency. of Law, p. 9, note.)

The rule is thus stated by Shearman & Redfield on the Law of Negligence, (sec. 675): "When the particular engine, which caused the fire, cannot be fully identified, evidence, that sparks and burning coals were frequently dropped by engines passing on the same road upon previous occasions, is relevant and competent to show habitual negligence, and to make it probable, that the plaintiff's injury proceeded from the same quarter. * * * If the engine, which emitted the fire is identified, then evidence on either side as to the condition of other engines, and of their causing fires, has been held irrelevant, but not so, if it is not fully identified."

In *Gibbons* v. *Wisconsin Valley Railroad Co.* 58 Wis. 335, the court said: "Where there is no proof of what particular engine set the fire, and the circumstantial evidence is such that there is a strong probability, that some engine on the road did set the fire, then it may be proper to show that the engines on that road generally emitted sparks, or that some one, or more of them, did so at other times and places."

In *Henderson* v. *Railroad Co.* 144 Pa. St. 461, it was said: "Where the injury complained of is shown to have been caused, or, in the nature of the case, could only have been caused by sparks from an engine which is known and identified, the evidence should be confined to the condition of that engine, its management, and its practical operation. Evidence tending to prove defects in other engines of the company is irrelevant, and should be excluded. * * * It may, therefore, be considered as settled, in cases of this kind, where the offending engine is not clearly or satisfactorily identified, that it is competent for the plaintiff to prove that the defendant's

locomotives generally, or many of them, at or about the time of the occurrence, threw sparks of unusual size and kindled numerous fires upon that part of their road, to sustain or strengthen the inference that the fire originated from the cause alleged."

In *Campbell* v. *Missouri Pacific Railway Co.* 121 Mo. 340, it was said: "If the issue had been of negligence in the construction or management of the engine only, and the engine, which could only have caused the damage, had been clearly identified, evidence that other engines emitted sparks and set fires would have been inadmissible under the decisions of this court."

Counsel for appellant refer to certain cases, which, as it is claimed, hold to the contrary of this doctrine, but we think, that, upon a careful examination of such cases, the facts therein stated will appear to be such as not to bring the cases in conflict with the rule here laid down. For instance, in *Thatcher* v. *Railroad Co.* 85 Me. 502, where it was held, that evidence was admissible to show that fires were communicated by defendant's locomotives at different times within a certain period in the vicinity where the plaintiff's lumber was destroyed, it did not appear that the plaintiff, by his own testimony or that of his witnesses, was able to identify the locomotive claimed to have set the fire. So, in *Grand Trunk Railroad Co.* v. *Richardson*, 91 U. S. 454, which, upon its face, seems to sustain the contention of appellant, it is said by Mr. Justice Strong: "The particular engines (which caused the fire) were not identified." The case of *Grand Trunk Railroad Co.* v. *Richardson, supra*, is commented upon in *Gibbons* v. *Wisconsin Valley Railroad Co. supra*, and its reasoning upon this subject is criticised.

In view of the rule thus announced, and, inasmuch as the evidence in the case at bar tended to identify a particular engine as the cause of the injury, there was no error in the action of the court below in refusing to admit the offered testimony.

Appellant, however, contends that the testimony should have been admitted upon the alleged ground, that it was proper evidence in rebuttal of the case made by the defendant below. The statute of this State provides: "That in all actions against any person or incorporated company for the recovery of damages on account of any injury to any property, whether real or personal, occasioned by fire communicated by any locomotive engine while upon or passing along any railroad in this State, the fact that such fire was so communicated shall be taken as full *prima facie* evidence to charge with negligence the corporation, or person or persons who shall, at the time of such injury by fire, be in the use and occupation of such railroad," etc. (Rev. Stat. chap. 114, par. 78). The validity of this statute has been recognized and assumed in a number of cases decided by this court. (*Chicago, Burlington and Quincy Railroad Co.* v. *Jones,* 149 Ill. 361).

It was only necessary, in the first place, for the appellant, the plaintiff below, to establish a *prima facie* case of negligence against the appellee by introducing evidence, showing, or tending to show, that the fire was caused by a spark from the engine. When such *prima facie* case was made, the burden of proof was then cast upon the appellee to show, either that the fire was caused by some other agency, or that its engine was equipped with the necessary and most effective appliances to prevent escape of fire, and was in good repair, and was properly, carefully and skillfully handled by a competent engineer. Proof was introduced to sustain all of these defenses. The judgment of the Appellate Court, affirming the judgment of the circuit court, is conclusive upon these questions of fact, so far as we are concerned.

Of course, the testimony of the plaintiff, in a case like this, introduced for the purpose of making out a *prima facie* case, will ordinarily be circumstantial in its character. (*Henderson* v. *Railroad Co. supra; Sheldon* v. *Hudson River Railroad Co.* 14 N. Y. 218; 8 Am. & Eng. Ency. of

Law, p. 7). This circumstantial evidence may consist of proof, showing that it was possible for fire to reach the plaintiff's property from the defendant's engine or engines, and that the fire probably originated from that cause and from no other. It is always difficult, in any case, to prove, that the fire was caused by a spark from a locomotive, by a witness, who actually saw the spark falling upon the property destroyed, and who actually saw the fire arise from such falling spark. Here, the plaintiff proved, that the elevator was alongside the railroad right of way; that the weather was hot and dry; that the elevator itself was in an inflammable condition; that a train, drawn by a locomotive emitting a large quantity of falling sparks, passed the elevator a few moments before the fire broke out; that the fire broke out upon the side of the elevator, upon which the train passed, and that the wind was in the right direction to blow the sparks to the spot where the fire first broke out. All these circumstances were sufficient to make such a *prima facie* case, as justified a submission to the jury of the question, whether or not the fire was caused by a spark from the engine. If, in the present case, where the engine alleged to have caused the injury was identified, testimony as to other fires occurring on the line of the road shortly before or after the fire in question was admissible at all, it was admissible as a part of appellant's original case. To make a *prima facie* case, it was bound to introduce evidence, tending to show that a spark from the engine caused the fire. Evidence, that other engines had caused other fires about the same time, was merely evidence, tending to show that this fire may have been caused by a spark from the particular engine in question. Therefore, the testimony should have been introduced, if at all, as a part of plaintiff's original case. It was, however, offered as a part of plaintiff's rebutting testimony. Where testimony, which might properly have been introduced as proof in chief,

is offered by the plaintiff in rebuttal, it is discretionary with the trial court whether such testimony shall be admitted or not, and the action of the court in this regard is not assignable as error. (*City of Sandwich* v. *Dolan*, 141 Ill. 430; *Grand Trunk Railroad Co.* v. *Richardson, supra;* 8 Ency. of Pl. & Pr. p. 132). Inasmuch, therefore, as the offered evidence, if competent at all, would have been, in strictness, a part of the plaintiff's original case, its admission or exclusion upon the rebuttal was a matter of discretion, and, whether right or wrong, cannot be reviewed here. The fact, that the defendant sought to show in defense, that the fire was caused by some agency inside of the elevator, did not make the offered testimony strictly rebutting in its character, but it was none the less on that account a part of plaintiff's original case, as going to show, that the fire was caused by a spark from the engine. Nor can it be said, that the testimony was admissible, merely because one of defendant's witnesses, in stating what kind of appliance for the arresting of sparks was upon the engine in question, also stated that the same kind of appliance was on all the other engines of the road. As the engine causing the injury was identified, the question was, whether it was properly equipped or managed. It was immaterial how other engines may have been equipped or managed. And, even if it had been shown that other fires had occurred caused by other engines, such fires may have been caused by the careless management of the engines rather than the defective character of their equipment. Surely, proof tending to show, that other engines were managed improperly, could throw no light upon the question, whether the engineer, managing this particular engine, was skillful or not.

Appellant refers to the case of *Illinois Central Railroad Co.* v. *McClelland*, 42 Ill. 355, as an authority for the admission of the evidence here offered in rebuttal. But the facts in that case are essentially different from those here. In the *McClelland case*, there was no proof that

the engine, throwing the sparks into plaintiff's meadow, where the grass and hay had been burned, was provided with any means, by which they might have been arrested; but the defendant company introduced proof to show, that an engine, thus provided, would not throw sparks one hundred feet, it having been proven that the meadow was one hundred feet from the track. Thereupon, the plaintiff was permitted to show by three witnesses on the rebuttal, that, during the year the accident happened, they had seen engines of the company throw sparks over one hundred feet. It was held that the testimony was properly admitted. It was directly contradictory of the evidence of the defendant that a properly equipped engine would not throw the sparks one hundred feet, and tended to prove that the particular engine, causing the fire in that case, was not equipped with a proper spark-arrester.

The judgments of the Appellate and circuit courts are affirmed.

*Judgment affirmed.*

Mr. Justice Boggs took no part in the decision of this case.